Ruoting Men (WSBA No. 63842)
GLACIER LAW LLP
506 SECOND AVENUE, SUITE 1516.
SEATTLE, WA 98104.
Ruoting.men@glacier.law
Tel: +1 (212)729-5049

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| HONGCHAO JIANG,<br><br>   *Plaintiff*,<br><br> v.<br><br>FESTOOL GMBH.<br><br>   *Defendant*. | Case No. 2:25-cv-1471<br><br>**Complaint For Declaratory Judgment**<br><br>**Jury Trial Demand** |

**COMPLAINT**

This is an action brought under the Declaratory Judgment Act by Plaintiff HONGCHAO JIANG d/b/a IMQUALI ("Plaintiff" or "Jiang"), against Defendant FESTOOL GMBH ("Defendant" or "Festool"), seeking a declaration that Plaintiff's drywall sander products, identified by ASINs B0CRK9JD72 and B0B9B4Y53F (the "Accused Product" or "Drywall Sander") do not directly or indirectly infringe Patent No. US7,914,167B2 (the "'167 Patent"), either literally or under the doctrine of equivalents, and/or that the '167 Patent is invalid. Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Plaintiff alleges as follows:

## INTRODUCTION

1. Plaintiff received a notice from Amazon.com ("Amazon") dated July 18, 2025, stating that Amazon had received a report from Defendant alleging that the Accused Product infringes U.S. Patent No. 7914167. *See* Exhibit A.

2. Defendant's objectively baseless infringement complaint to Amazon has caused, and continues to cause significant harm to Plaintiff, as the Accused Product remains at risk of being removed from Amazon. Further, Plaintiff will lose all associated goodwill in the listings, not to mention lost sales. The alleged infringement to Amazon is wholly without merit as the Accused Product does not meet each and every limitation of any claim under the '167 Patent.

## NATURE OF THE ACTION

3. This action seeks Declaratory Judgments of patent non-infringement under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the United States Patent Laws, 35 U.S.C. § 101 *et seq*. Defendant's actions have caused and continue to cause significant harm to Plaintiff, as the Accused Product is at risk of being removed from Amazon through enforcement of the '167 Patent.

4. This is an action under the Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202, seeking a declaratory judgment that Defendant's '167 Patent is invalid under at least 35 U.S.C. §§ 102, 103 and/or 112.

5. This action further seeks damages for Defendant's tortious activities.

## PARTIES

6. Plaintiff Hongchao Jiang is an individual residing at 401B Yunshan Xiaoyuan, Tonghe Subdistrict, Baiyun District, Guangzhou, Guangdong Province 510080, China.

7. Upon information and belief, Defendant Festool GmbH is a company organized under the laws of Germany, with a principal place of business located at Wertstrasse 20, Wendlingen 73240, Germany. Upon information and belief, Defendant is registered as the assignee of the '167 Patent.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331, 1338(a), because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 100 et seq.

9. An actual case or controversy exists between the parties to this action. Defendant's actions have caused and continue to cause significant harm to Plaintiff as the Accused Product is at risk of being removed from Amazon through the enforcement of the '167 Patent. Defendant's actions thereby give rise to an actual controversy under 28 U.S.C. §§ 2201 et. seq.

10. This Court has personal jurisdiction over Defendant in this action at least because Defendant initiated and continues to pursue enforcement proceedings concerning the '167 Patent within this judicial district. *See*, e.g., *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884–86 (Fed. Cir. 2008) (holding that specific personal jurisdiction is satisfied by a patentee's "extra-judicial patent enforcement" efforts in the forum state). Specifically, Defendant submitted a complaint of infringement of the '167 Patent to Amazon.com, Inc. ("Amazon"), which has a place of business located at 410 Terry Ave. N, Seattle, WA 98109. Each claim presented herein arises from Defendant's actions directed at this forum, establishing sufficient minimum contacts under Washington's Long-Arm Statute, RCW 4.28.185.

11. For the same reasons, venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action took place within this District.

## THE ACCUSED PRODUCTS

12. On or about July 18, 2025, Amazon sent a notice to Plaintiff stating that its Drywall Sander listing may be removed from the platform if Plaintiff does not address the patent infringement claim. The notice from Amazon is attached hereto as **Exhibit A**.

13. In the notices, Amazon informed Plaintiff that the right owner of the '167 Patent is identified as Festool GmbH, with the rights owner's email address listed as Brian.Stevens@afslaw.com. *Id.* The alleged infringement type is Patent and the Patent Number is U.S. 7,914,167. *Id.*

14. The Amazon marketplace constitutes Plaintiff's primary sales channel in the United States. To remain competitive in the United States market for the Accused Product, Plaintiff must maintain its product listings on Amazon. Defendant's infringement complaint has placed Plaintiff's listings in imminent danger of removal from Amazon, thereby threatening to cut off access to Plaintiff's most significant channel of trade. As a result, Defendant's submission of the infringement complaint to Amazon has caused, and continues to cause, immediate and irreparable harm to Plaintiff.

## U.S. PATENT NO. 7,914,167 C1[1]

15. Upon information and belief, the '167 patent was assigned to Defendant on or around May 23, 2023. *See* **Exhibit B**.

16. The '167 Patent is entitled "Surface modifying apparatus having illumination system and method thereof" and generally discloses "surface modifying apparatus, such as non-motorized and motorized sanding tools, with an illumination system providing an intensity and

---

[1] as amended by Ex Parte Reexamination Certificate.

incidence angle on the working surface that facilitates visual inspection of defects and blemishes on the surface being modified in a safe, low cost, and convenient manner." **Exhibit C**, at Abstract.

17. The '167 Patent was issued on March 29, 2011. The '167 Patent has three independent claims 1, 17 and 21 dependent claims. *See Id.*

## COUNT I

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF ONE OR MORE CLAIMS OF THE '167 PATENT)

18. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

19. An actual, continuing and justiciable controversy exists between Plaintiff and Defendant concerning the non-infringement of the '167 Patent by the Accused Product, as evidenced by Defendant's allegations of infringement on Amazon, as set forth above. A judicial declaration is necessary to determine the parties' respective rights regarding the '167 Patent.

20. Plaintiff's Accused Product does not infringe any of the presumably valid claims of the '167 Patent, as the Accused Product fails to meet one or more elements of independent claims 1, 17 and 21 of the '167 Patent.

21. Claim 1 of the '167 Patent recites:

A surface sanding apparatus comprising:
    a housing assembly including a major surface attachable to a surface sanding abrasive article; and
    a source of illumination coupled to the housing assembly and operable for projecting a beam of light to an area to be illuminated on a working surface adjacent at least a portion of a periphery of the housing assembly with sufficient intensity and at a generally consistent and shallow angle thereby creating shadows, by defects located at and below the surface to be sanded, that are visually discernable.

22. Claim 17 of the '167 Patent recites:

A method of sanding a working surface, the method comprises: providing a surface sanding article attached to a major surface of a housing assembly of a surface sanding apparatus comprising:

a housing assembly including a major surface attachable to a surface sanding abrasive article; and

a source of illumination coupled to the housing assembly and operable for projecting a beam of light to an area to be illuminated on a working surface adjacent at least a portion of a periphery of the housing assembly with sufficient intensity and at a generally consistent and shallow angle thereby creating shadows, by defects located at and below the surface to be sanded, that are visually discernable, wherein the housing assembly includes an upper body portion adapted to be gripped by a hand for non-motorized movement of a surface sanding article over a working surface, wherein the major surface of the housing assembly of the apparatus opposes the gripping portion and is a surface of a generally planar body member and is adapted to be coupled to a surface sanding article;

projecting at least a beam of light from a source of illumination coupled to the housing assembly to an area of illumination on a working surface adjacent at least a portion of a periphery of the housing assembly with sufficient intensity and at a generally consistent and shallow angle thereby creating shadows, by defects located at and below the surface to be sanded, that are visually discernable, and sanding a working surface with the surface sanding article.

23. Claim 21 of the '167 Patent recites:

A surface sanding apparatus comprising: a housing assembly including a major surface attachable to a surface sanding abrasive article; and a source of illumination coupled to the housing assembly and operable for projecting a beam of light to an area to be illuminated on a working surface adjacent at least a portion of a periphery of the housing assembly with sufficient intensity and at a generally consistent and shallow angle thereby creating shadows, by defects located at and below the surface to be sanded, that are visually discernable, wherein the housing assembly includes: a rotary portion defining a major surface to be connected to a surface sanding article, a stationary portion, a handle is pivotally connected to the stationary portion for pulling the housing assembly over a working surface, and a source of motive power on the stationary portion for driving the rotary portion; wherein the source of illumination is coupled to the stationary portion to project the beam to the area adjacent the periphery of the rotary portion and wherein the source of illumination is in close proximity and at a fixed height relative to the major surface.

- **Plaintiff's Accused Product I (ASIN B0CRK9JD72)**

24. Plaintiff's Accused Product I (ASIN B0CRK9JD72) does not directly or indirectly infringe the '167 Patent, either literally or under the doctrine of equivalents, at least because its

lights do not maintain a consistent shallow angle. The LED ring in Plaintiff's Accused Product I is mounted on a movable annular shield, which shifts up and down during use in response to the undulating working surface. As the shield moves under the force of the damping spring, the angle of incidence varies accordingly. Claim 1 specifies that the light source must remain fixed relative to the sanding surface in order to maintain a consistent shallow angle. Accordingly, for at least this reason, Plaintiff's Accused Product I does not literally infringe claim 1. For a detailed non-infringement analysis, *see* Exhibit D.

25. Moreover, the illumination system of Plaintiff's accused product functions in a substantially different manner, undermining the purpose of the claimed invention—which is to consistently illuminate the area immediately adjacent to the sanding surface at a low angle. Therefore, for at least this reason, Plaintiff's Accused Product I also does not infringe claim 1 under the doctrine of equivalents. *Id*.

26. Claim 17's first step effectively requires providing the apparatus described in claim 1 (including all the same features) for use in the method. As explained above regarding claim 1, Plaintiff's Accused Product I does not embody the claimed apparatus. One cannot "provide" a non-motorized, hand-sanding tool by supplying Plaintiff's Accused Product I, which is a motorized sander. Plaintiff's Accused Product I lacks the required configuration—namely, a handheld, non-motorized sanding block with fixed illumination around its periphery. Instead, it presents a motorized tool with a different lighting mechanism. Because the apparatus provided in the accused scenario deviates from the tool specified in the claim, this step is not literally met. *Id*.

27. Furthermore, to the extent claim 17 requires that the provided tool emit light at a consistent shallow angle adjacent to the edge of the tool, the design of Plaintiff's Accused Product I also fails to meet this requirement. As previously discussed, its LED ring, mounted on a spring-

loaded shield, does not maintain a consistent shallow angle around the pad's periphery. Thus, even assuming Plaintiff's Accused Product I could be deemed "equivalent" to the claimed tool, it still lacks the required illumination functionality at the necessary angle and location. Accordingly, for at least this reason, Plaintiff's Accused Product I does not infringe claim 17, either literally or under the doctrine of equivalents. *Id*.

28. Furthermore, the source of illumination (LED array) of IMQUALI's sander (Accused Product I) is not coupled to the stationary portion. It is physically mounted on the separate Annular Shield. This shield, in turn, is connected to the stationary portion only via four flexible Damping Springs. These springs are specifically designed to permit relative movement and provide vibration isolation. A connection via an intentionally movable, damping intermediary is not a direct or rigid coupling as required by the claim. Therefore, the source of illumination is coupled to a separate, movable component, not the stationary portion itself.

29. The Annular Shield of IMQUALI's sander (Accused Product I), upon which the LEDs are mounted, has a diameter significantly larger than the Rotary Portion. As is evident from the product photographs, the shield physically stands between the LED array and the periphery of the Rotary Portion, completely obstructing the light path to that area. The light is projected outwards from the shield, illuminating a wide work area far from the Rotary Portion's edge, not adjacent to it. The design provides general area lighting, not the edge-specific lighting required by the claim.

30. And The Accused Product's illumination source is not in close proximity to the major surface. The large-diameter Annular Shield creates a substantial physical, radial, and vertical gap between the LED array and the major surface of the Rotary Portion, which it encloses. This

large, intervening structure negates any reasonable interpretation of "close proximity." The components are intentionally separated, not closely arranged.

32. And The height of the illumination source relative to the major surface is not fixed; it is intentionally variable. The four Damping Springs that form the sole connection between the Annular Shield (carrying the LEDs) and the Stationary Portion (which drives the Rotary Portion) are designed to flex. During operation, as the user applies varying pressure and the tool vibrates, the springs compress and expand. This causes the height of the LED array relative to the major surface of the Rotary Portion to change dynamically. The height is variable by design, not "fixed.". These differences are substantial, and therefore, at least due to the existence of these differences, the accused product does not infringe claim 21 under either literal infringement or the doctrine of equivalents.

- **Plaintiff's Accused Product II (ASIN B0B9B4Y53F)**

32. Plaintiff's Accused Product II does not literally infringe claim 1 of the '167 Patent because it is a motorized sander. Claim 1 explicitly requires a non-motorized, hand-sanding apparatus—one that is gripped and moved solely by hand without any motorized assistance. In contrast, Plaintiff's Accused Product II includes an electric motor that generates the sanding motion, with the user merely guiding the device rather than supplying the sanding force. During reexamination, the claim was amended to specifically include the "non-motorized" limitation in order to distinguish the invention from prior art involving powered tools. Accordingly, because Plaintiff's Accused Product II is a fundamentally motor-driven apparatus, it does not satisfy this core limitation and thus does not literally infringe claim 1. ***See* Exhibit E** for detailed non-infringement contentions concerning the Accused Product II.

33. Additionally, Plaintiff's Accused Product II does not infringe claim 1 under the doctrine of equivalents. The patentee added the "non-motorized" limitation to overcome prior art, and thus prosecution history estoppel bars any attempt to recapture motorized sanders through equivalence. The difference between a tool whose sanding motion is entirely generated by hand versus one powered by an electric motor is both substantial and fundamental to how the device operates. It is not an insubstantial variation. For these reasons, Plaintiff's Accused Product II does not infringe claim 1, either literally or under the doctrine of equivalents. *Id*.

34. Claim 17 recites a method that begins with providing the apparatus described in claim 1 for use in sanding. As discussed above, Plaintiff's Accused Product II does not meet the apparatus limitations of claim 1, as it is a motorized sander rather than a non-motorized hand tool. One cannot satisfy the requirement of "providing" a non-motorized sanding device by supplying a motor-powered tool. Because Plaintiff's Accused Product II is not the claimed apparatus, the method set forth in claim 17 is not literally performed when the accused product is used. *Id*.

35. Moreover, infringement under the doctrine of equivalents is precluded for the same reasons discussed with respect to claim 1. The "non-motorized" limitation was added during prosecution to distinguish over prior art, and thus cannot be broadened through equivalence without impermissibly recapturing surrendered subject matter. The difference between manual and powered sanding methods is substantial, both in function and in operation. Accordingly, Plaintiff's Accused Product II does not infringe claim 17, either literally or under the doctrine of equivalents. *Id*.

36. The accused product II does not literally infringe claim 21 for at least three distinct reasons:

37. The beam is not projected "to the area adjacent the periphery of the rotary portion." In the accused IMQUALI's sander, the LED array is mounted on the stationary portion, but a large-diameter annular shield is positioned between the LEDs and the rotary portion. This shield physically obstructs the light path, preventing the light from illuminating the area immediately adjacent to the edge of the sanding pad. Instead, the light is cast outward, away from the critical work area at the pad's periphery.

38. The source of illumination is not "in close proximity" to the major surface. The same large annular shield creates a significant radial and vertical gap between the LED array and the major surface of the rotary portion. This intentional separation for housing and dust collection purposes negates any reasonable interpretation of "close proximity."

39. The source of illumination is not at a "fixed height relative to the major surface." In the accused product II, the rotary portion (which includes the major surface) is itself movably mounted to the stationary portion. This flexible mounting allows the sanding pad to conform to uneven work surfaces. Because the light source is on the stationary portion while the major surface is on the movable rotary portion, the vertical distance between them is not fixed. It changes dynamically as the sander operates and moves over a surface. This directly contradicts the "fixed height" requirement.

40. These differences are substantial and not equivalent. The function of the claimed illumination system is to provide consistent, revealing light precisely at the sanding edge by fixing the light source's height and position relative to that edge. The accused product operates in a fundamentally different way: its light is blocked from the immediate edge, is not in close proximity, and its height relative to the sanding surface is intentionally variable. This leads to a different result—general area illumination that is inconsistent at the sanding edge. Finding equivalence

would vitiate the distinct claim limitations of "adjacent the periphery," "close proximity," and "fixed height," all of which define the core novelty of the claimed lighting geometry. Therefore, the accused product does not infringe claim 21 under the DOE.

41. Likewise, since the presumably valid independents Claim 1, 17 and 21 of the '167 Patent is not infringed, neither are the remaining dependent claims **2–9, 11, 13–16 and 18-20**. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9, 1553 (Fed. Cir. 1989) (a dependent claim cannot be infringed if any claim from which it depends is not infringed).

42. Defendant's baseless infringement reports on the Amazon platform have caused imminent and real threat of an infringement lawsuit. Defendant's submission of the infringement complaint to Amazon has caused, and continues to cause, immediate and irreparable harm to Plaintiff by placing the Accused Product at risk of being delisted.

43. A substantial, immediate, and real controversy exists between Plaintiff and Defendant regarding the non-infringement of the '167 Patent.

44. Plaintiff seeks a declaratory judgment that Plaintiff's Accused Product does not directly or indirectly infringe the presumably valid one or more claims of the '167 Patent, either literally or under the doctrine of equivalents, under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the United States Patent Laws, 35 U.S.C. § 101 *et seq.*

45. Plaintiff is also entitled to recover damages caused by Defendant.

## COUNT II
### (DECLARATORY JUDGMENT OF INVALIDITY OF ONE OR MORE CLAIMS OF THE '167 PATENT)

46. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

47. An actual, continuing and justiciable controversy exists between Plaintiff and Defendant concerning the validity of the '167 Patent, as evidenced by Defendant's allegations of infringement on Amazon, as set forth above.

48. The claims of the '167 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of the provisions of the patent laws of the United States, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

49. The illumination clause—"with sufficient intensity and at a generally consistent and shallow angle" in claims 1, 17, and 21—fails §112(b) under Nautilus (Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898 (2014)) because it is framed entirely in subjective terms that provide no objective boundaries. "Sufficient intensity" leaves readers guessing how bright the light must be; the patent neither quantifies brightness (lumens, lux, etc.) nor supplies a test for adequacy. Likewise, "generally consistent" offers no tolerance band for variation, and "shallow angle" is merely relative, giving only a rough "≤ 45°" notion in dependent claims without specifying whether, for example, 30°–50° remains "shallow." Combined, the phrase supplies nothing more than a functional goal—cast discernable shadows—so a skilled artisan cannot tell with reasonable certainty when illumination falls inside or outside the claim's scope.

The prosecution record underscores this ambiguity: during ex parte re-exam the Examiner repeatedly labeled "sufficient intensity," "generally consistent," and "visually discernable" as indefinite, noting that all elements other than "a source of

illumination" were purely functional. Although the claims were ultimately allowed, the patentee never added quantitative limits or clarified the disputed words; the allowance simply shows the Examiner chose to discount those terms rather than issue a formal §112 rejection. Because competitors must guess how bright is "sufficient" and how narrowly an angle must remain "generally consistent and shallow," claims 1, 17, and 21—and any claims incorporating that language—are indefinite.

50. Defendant's baseless infringement reports on the Amazon platform have caused imminent and real threat of an infringement lawsuit. Defendant's submission of the infringement complaint to Amazon has caused, and continues to cause, immediate and irreparable harm to Plaintiff by placing the Accused Product at risk of being delisted.

51. A substantial, immediate, and real controversy exists between Plaintiff and Defendant regarding the validity of the '167 Patent.

52. Plaintiff seeks a declaratory judgment that the claims of the '167 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one of more of the provisions of the patent laws of the United States, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

53. Plaintiff is also entitled to recover damages caused by Defendant.

### COUNT III
### (Tortious Interference with Contractual Relations)

54. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

55. Under Washington law, the elements of a claim for tortious interference with a contractual relationship are: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Tacoma Auto Mall, Inc. v. Nissan North America, Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012).

56. Plaintiff has a valid and existing contract with Amazon in order to sell its products through Amazon.com.

57. Plaintiff is informed and believes, and on that basis alleges, that Defendant knew of Plaintiff's contractual relationships with Amazon.

58. Plaintiff is informed and believes, and on that basis allege, that Defendant intentionally interfered with those contractual relationships and furthermore knowingly and intentionally, by ways of asserting materially false allegations of patent infringement against Plaintiff in order to has Plaintiff's listing removed and eliminate Plaintiff's lawful competition.

59. As a result of Defendant's improper acts, Plaintiff' listings were removed from Amazon. Defendant's improper acts interfered with Plaintiff's existing contracts with Amazon, including but not limited to the Amazon Services Business Solutions Agreement, impacting Plaintiff's abilities to fulfill their contractual obligations with Amazon.

60. As a result of Defendant's improper acts, Plaintiff's contractual relationships and/or business expectancy with Amazon are compromised, and Plaintiff has suffered interruptions of their ongoing business activities with Amazon.

61. As a result of Defendant's improper acts, Plaintiff has suffered direct, proximate, and foreseeable damages and continues to suffer direct, proximate and foreseeable damages.

62. Defendant's efforts to have Plaintiff's products delisted through improper means was and is in itself unlawful and fraudulent.

63. By reason of Defendant's acts, Plaintiff is entitled to equitable remedies and damages in an amount to be proven at trial.

**COUNT IV**
**(Unfair Competition in Violation of the Washington Consumer Protection Act (RCW 19.86.020 et seq.))**

64. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

65. The Washington Consumer Protection Act (CPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Rev. Code Wash. 19.86.020. The elements for a private CPA claim are: 1) an unfair or deceptive act or practice, 2) occurring in trade or commerce, 3) affecting the public interest, 4) injury to a person's business or property, and 5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).

66. Upon information and belief, Defendant offers for sale a variety of products on Amazon, including but not limited to power sanding tools or other surface preparation devices, which compete with Plaintiff's Accused Product.

67. It is in the public interest for consumers to be able to choose from a wide variety of products when shopping online such as on Amazon.

68. Defendant engaged in unfair competition in violation of Washington's Consumer Protection Act, RCW 19.86.020 et seq., by committing an unfair or deceptive act that deceived the intended audience in Washington, occurred in trade or commerce, impacted the public interest in Washington, and directly caused injury to Plaintiff's business and property.

69. As a result of Defendant's conduct, Plaintiff is entitled to damages in an amount to be proven at trial, including reasonable attorneys' fees, costs, and treble damages under RCW 19.86.090.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment against Defendant as follows:

A. For judgment in favor of Plaintiff against Defendant on all claims.

B. Declaring that Plaintiff's Accused Product does not infringe any of the claims of the '167 Patent;

C. Declaring that the claims of the '167 Patent are invalid for failing to satisfy the criteria of 35 U.S.C. §§ 102, 103 and/or 112;

D. Preliminary and permanent injunctions ordering Defendant to withdraw all Amazon infringement complaints lodged against the Plaintiff's Accused Product based on the '167 Patent, and to refrain from lodging any further infringement complaints regarding the same (the "Order");

E. Ordering Defendant to return to the Court with proof of compliance of the Order within seven (7) days of entry thereof, with a copy served on Plaintiff's attorney;

F. A finding that this case is exceptional and an award to Plaintiff of their costs, expenses, and reasonable attorney fees incurred in this action pursuant to 35 U.S.C § 285;

G. Awarding Plaintiff damages due to Defendant's improper acts, doubled and/or trebled due to the willful and exceptional nature of the case;

H. Awarding Plaintiff their costs of suit, including the costs of experts and reasonable attorneys' fees pursuant to, inter alia, Washington's Consumer Protection Act, due to the exceptional nature of this case, or as otherwise permitted by law;

I.  Awarding Plaintiff compensatory, general and special, consequential and incidental damages in an amount to be determined at trial;

J.  Awarding Plaintiff exemplary, punitive, statutory, and enhanced damages;

K.  Awarding pre- and post- judgment interest; and

L.  Awarding Plaintiff such other and further relief as this Court deems is just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Date: August 4, 2025

By: /s/ Ruoting Men
Ruoting Men, Esq. (WSBA No. 63842)
GLACIER LAW LLP
506 SECOND AVENUE, SUITE 1516.
SEATTLE, WA 98104.
Ruoting.men@glacier.law
Tel: +1 (212)729-5049

*Counsel for Plaintiff*